## THE CENTRAL BRIDGE CORPORATION *vs.* ZIBA ABBOTT

A vote by the proprietors of a bridge, that "All the present proprietors of stock therein shall have the right to pass free of toll, with their horses and carriages," is confined to persons, who are then proprietors of the bridge, and does not ex- tend to those who subsequently become the purchasers of stock then existing.

The proprietors of a toll bridge may maintain an action of assumpsit, as on an im- plied promise, against any one passing over the bridge, who is liable by law to pay toll, although the defendant has always claimed an exemption from such lia bility, and refused to pay the tolls.

THIS was an action of assumpsit, submitted to the court of common pleas upon an agreed statement of facts, and, upon the judgment of that court for the plaintiff, brought into this court by appeal.

The defendant, before the commencement of the action, and subsequent to the 14th of March, 1833, had passed over the plaintiffs' bridge, with his horses and carriages, until the tolls therefor, at the rates allowed by law, amounted to the sum of $20; he, the defendant, at all times, claiming a right to pass over the bridge, free of toll, and expressly refusing to pay any toll, when called upon to do so.

The other facts in the case are sufficiently stated in the opinion of the court.

The case was argued in writing by *W. P. Webster*, for the plaintiffs, and by *I. W. Beard*, and *A. J. Gunnison*, for the defendant.

METCALF, J. The plaintiffs' charter (*St.* 1824, *c.* 110,) granted to them certain tolls. By *St.* 1832, *c.* 117, they were authorized to reduce their tolls, and to compound the same in all cases in which they might deem it expedient. This last statute was repealed, one year afterwards, so far as it authorized the compounding of tolls. *St.* 1833, *c.* 218. Four days after the repealing act was passed, to wit, on the 14th of March, 1833, the plaintiffs passed the following vote: " All present proprietors of stock in Central bridge shall have the right to pass free of toll, with their horses and carriages." The defendant was not then a proprietor of stock, but has since become a proprietor of stock which then existed. And he contends that by becoming owner of such stock, he is entitled, by force of the vote, to pass the bridge free of toll; or, to use the language of his counsel, that " the vote intended that the right to pass the bridge, free of toll, should become a concomitant part of the stock which then existed." But the court are of opinion that, by the vote, no one was exempted from liability to pay toll, besides those who then owned stock in the bridge. The " present proprietors " cannot be construed to include future proprietors. On the defendant's construction of the vote, all the owners of stock in the bridge would

be forever authorized to pass the bridge, toll free, with their horses and carriages. Such a construction and effect cannot be given to the vote, except by an utter perversion of its terms. Nor can the construction of this vote be affected by the previous vote of July 2d, 1832, set forth in the statement of facts. Whether the vote granted to those, who were proprietors when it was passed, an exemption from paying toll for their lives, or only while they should continue to be proprietors, is a question not now before the court, and on which no opinion is given. Their assignees are not exempted, and the defendant is therefore liable to pay toll, to the same ex tent as any stranger who passes over the bridge.

This view of the case renders it unnecessary to consider whether the votes and proceedings of the plaintiffs, on the subject of tolls, were warranted by their charter, or by *St.* 1832, *c.* 117, or by any other law, and leaves only one other question to be decided, namely, whether the defendant is liable in this action of assumpsit.

It is well settled that assumpsit lies for tolls. But the defendant insists that this action cannot be maintained against him, because he has always claimed exemption from liability to pay toll, and also has always refused to pay it. And he relies on the case of *Whiting* v. *Sullivan*, 7 Mass. 107, where it is said that the law will not imply a promise of any person against his own express declaration; because such declaration is repugnant to any implication of a promise. Admitting this to be true, as a general rule, it clearly is not true in those cases in which a party is under a legal obligation paramount to his will. Thus, if a husband wrongfully expels his wife from his house, he is liable in assumpsit to any person who furnishes her with necessary supplies, although he gives notice that he will not be liable for her support. The law imposes on him the obligation to support his wife, and does not consult his will, on the question whether he shall pay for her support, when it is furnished by others, in consequence of his wrongful default. There are numerous instances of the like kind; and the case at bar is one of them.* The

* See 20 American Jurist, 9.

defendant has passed over the plaintiffs' bridge, and the law obliges him to pay toll, although his will may not consent. *Judgment for the plaintiffs.*